Good morning, Your Honors. May it please the Court, Patrick Hooper for Dr. Guzman. I'd like to reserve, if possible, a couple minutes for rebuttal. If you do so, just watch the clock. I will do so. Of course, as Your Honors know, the issue here is two issues. Basically, does federal Medicaid law allow summary suspensions from the Medi-Cal program merely for being under investigation? And then, does the Due Process Clause allow summary suspension for being under investigation? And a summary suspension, by definition, means that the doctor is kicked out of the program before he has any opportunity to be heard whatsoever. It goes into effect immediately. In this case, it went into effect about six days after the doctor received the letter. A suspension is tantamount to an exclusion under federal law. Let's start with the federal law issue. I've looked all throughout the federal Medicaid and the other federal laws. There is nothing that allows an exclusion based upon being under investigation. Now, Judge Morrow, and Judge Morrow does an excellent job of her opinions, so she's always difficult to challenge. But in this case, she raised unilaterally the issue of whether the suspension would be permitted under 42 U.S.C. Section 1320A7-B5. And she says that was hard just to remember that, Your Honor. Well done. And she said, well, it looks to me like that allows a state to summarily do it, summarily suspend someone. Now, what, and she raised that on her own, so I didn't get a chance at oral argument much to talk about that. But where we are in the brief at page 36 of the addendum, 36 of the addendum, this is the interpretation of that very statute by the Secretary of Health and Human Services. And in that very interpretation by the Secretary of Health and Human Services, this is not Dr. Guzman or his attorney, this is the federal administrator interpreting the federal statute, he calls that the piggyback provision. And he says as follows, that when there is a state-initiated exclusion, and the OIG bases it on that, he wants to make certain. In making that determination, the agency must afford, and when he says the agency, he means the state Medicaid agency, must afford the provider certain minimum due process safeguards before effectuating the exclusion, such as notifying the provider of the proposed exclusion and the basis, therefore, which was done here, and giving the provider a chance to respond to the allegations against them, either in person or in writing. That's not given under state law. Now, counsel, are you arguing the federal statute applies to this case? Because your brief argued preemption, did it not? Well, the federal Medicaid law, Your Honor, preempts any contrary state statute or even state constitutional provision. When interpreting the federal Medicaid law, which is where we are, federal Medicaid law is supreme. And what I'm quoting is the federal Medicaid law, I'm not in the due process yet, but the federal Medicaid law answers this question, and the court doesn't even have to get to due process. But your client was suspended under the state provision. That's correct. Under the state statute that we believe is inconsistent with the controlling federal Medicaid law, which in the area of Medicaid is supreme to any state statute. I thought this was a joint federal-state process. It is a joint federal process. This is just the antithesis of what you normally see in a preemption situation. Well, I didn't argue that the term preemption was by the district court. I did not use the term preemption. What I argued was the well-established case law, including U.S. Supreme Court case law and Ninth Circuit case law, the Azar case, a case I handled, says specifically that federal Medicaid law controls over state law. Even a federal regulation trumps a state statute. That may be hard to believe, but that's the way the law is. And what I'm saying is if you look at page 36 of the addendum, it's quite clear that the way the federal government has interpreted the federal law is to say you have to give some process to a doctor before you exclude them. I'm not following your argument in light of the statutory language. As I read, I guess it would be 1320A-7B. Five. Well, B first says the secretary may exclude. Right. Okay. And then it goes on to talk about under five that a state health care program, which is what we're dealing with here, for reasons bearing on the individual's professional competence, performance, or financial integrity. Right. Okay. So it seems that there are other grounds that a state may invoke when it has reason to question the integrity of the provider, and those grounds are not necessarily specified in the federal law. I'm with you. So whether we call it preemption is probably not the right word. Whether we focus the question on whether it has to be a federal ground or not, this language seems to suggest that there may be an alternative state ground, which is invoked to protect the integrity of the program, in this case to protect federal funds. I will concede that, and that's specifically what Judge Morrow said. But remember, we have two aspects to this. We have the substantive aspect, which is what is the ground, and then we have what procedure is required. Okay. But I want to answer the first question of the power, and it seems to me that the California legislature has given the power to the state Medicaid officials through the statute. I don't like it, but there it is. Well, I would probably agree with Your Honor. I think the way I would say it is the federal law has allowed the state legislature to give the Department of Health Services this authority. Now the question becomes what procedure goes along with it. All right. So we're on this. Because I thought you were arguing. It's all procedural due process. I understood, as Judge O'Scanlan did from reading your briefing, I thought you were arguing preemption. It's not a preemption. Well, I didn't use the term preemption. All right. Well, whoever used it, let's get rid of preemption. Forget about preemption. Now we're talking about first we've conceded there's power. Now the question is due process. Now I'm telling. All right. Now I'm with you. Now why shouldn't we look to an analogy under other federal statutes to things like forfeitures or temporary restraints on property when a grand jury indictment is returned or there's probable cause to accuse someone of a crime and the government first seizes the property and you are entitled to an immediate post-seizure or post-deprivation hearing, but you don't get one before because the government has probable cause to believe, in this case, that you have engaged in conduct which threatens the integrity of the federal program. Okay. Two responses, Your Honor, and I see my time's running short. First of all, we don't need to go outside of this statute because the federal agency responsible for administering this statute, Department of Health and Human Services, has interpreted it, and this is page 36 of the addendum, and I ask you to look at that. In the Federal Register of 1992, that's what I was just reading to you, the secretary has said, yes, the state may have all kinds of authority substantively, but we expect, we require the state to, at a minimum, give you some opportunity to be heard before effectuating, and I would submit, Your Honor, and I know Your Honor wrote lamas, and I thought we were going to get into lamas a little bit more, but seizing money versus putting someone out of a program that sets off a chain of events that does much more than knock the person out of the Medi-Cal program, essentially, in my opinion, ruins the person's career. We have undisputed expert testimony. I understand the harm argument. Well, there's a balancing. There is a balancing. And you notice Judge Morrow, in a very limited sentence, said there is no public interest that has been alleged here by the state. So when we're balancing, where is the interest on the part of the state? She didn't say that. And also under the state system, you have to understand, you don't get that prompt hearing like you do when you've been indicted. You don't get the prompt preliminary hearing. What you do is you get a written hearing, which is a bogus written hearing because when you are, quote, under investigation, so long as you remain under investigation, you're out. So you can do all you want to do, but you're out. Lamas, I just want to mention because I know Your Honor knows that case very well. I tried to convince Judge Morrow, and I'm going to try to convince this panel, that there's a difference between public employees and a private doctor. And I think that the Lamas case, which is based in part on the Supreme Court's decision in Bishop v. Woods, mentions that with public employees, the federal courts don't want to get into litigating and reviewing the tens of thousands of termination decisions and other things made by the federal court. I don't think that applies in a case like this. I wish I had more time. Counsel, your time has expired. Thank you very much. We'll hear from Ms. Burns. Good morning. May it please the Court, Janet Burns, Deputy Attorney General, on behalf of the appellee, Sandra Sherry, Director of the Department of Health Care Services. Ms. Burns. I'd just like to respond to a few of counsel's comments. The Department submits that the doctor is afforded due process, and even though counsel has referred to the Secretary of Health and Human Services' comments, the Secretary said that they have to report some due process. And we submit that the doctor was submitted some due process. We sent him a letter in January advising him of the charges. And the suspension did not go into effect six days later. It actually went into effect 44 days later, pursuant to the stipulation of the parties and the order of the court. And during that time period, Dr. Guzman could have met and conferred with the department to discuss the charges to see if they had met. Is the meet and confer element part of your state regulations? It's pursuant to Welfare and Institutions Code Section 14123.05. In other words, it's in the reg itself. No, it's a statute. It's in the statute. Yes. So he could have met and conferred with the department representatives to determine whether or not they would not go forward with the suspension or to reduce the penalty. He also could have filed a written appeal, pursuant to Welfare and Institutions Code Section 14143.65. Now, I know counsel alluded to saying the written appeal is not effective. He's relying on the declaration of Robert Tucino, 2004 Declaration of Robert Tucino, which was before the enactment of the meet and confer statute. And we submit that he had that appeal process available to him. So he was afforded some due process, which is what the Secretary of Health and Human Services said, that has to be provided to a Medicaid provider prior to the suspension. What's your response to Mr. Hooper's argument that under 43.65, it really isn't much of a hearing in the sense that all he gets to do is essentially have a face-to-face meeting and present whatever it is he has to say in the hope that maybe he can convince the department not to go forward, but that all they really need to determine is that he's under investigation, and that's kind of the end of it. But he's afforded some due process. It doesn't have to be perfect due process, and he has the opportunity to make the pitch to the department that they should not proceed with it. But what is the pitch? It's not me that's under investigation? You've got a different Guzman? I don't understand. In essence, you're offering him a meeting, but it's kind of a meeting without much hope of any kind of relief. No, I think you're referring to the written appeal process. I'm not entirely sure that that is the status of the department at this stage. What counsel's relying on is a declaration that was submitted in 2004 and that there is more opportunity for... Well, at some point, as I read the material, he's entitled to a full trial-type civil administrative hearing before an administrative law judge. Is that right? Well, Your Honor, that's what's unique about this case, is that Dr. Guzman was served with an accusation in 2006. And that triggers the administrative proceeding before the ALJ. Correct. And that was set to go to hearing in August of 2007, but it was delayed at the request of Dr. Guzman's counsel so that the criminal investigation could proceed. So had that accusation under Welfare and Institutions Code Section 14123 gone forward, they would have had a final administrative decision on these very charges. It's currently set, it's now back on calendar, to go forward in October of 2008. And I should point out that Judge Morrow's order specifically limits the temporary suspension in this case from March 6th until there is a final administrative proceeding. So this truly is a temporary suspension. I'd like to respond to counsel's arguments about the difference between a public employee versus in the Lamas case and why that's not applicable. We submit that, and the portion of the Lamas case that counsel is referring to, he's actually talking about the portion of the opinion, it's an equal protection challenge, and he's cited the portion of the language where the court is saying we're not going to get into every decision made by managers. And what the court is really saying is that employment claims have to rise to an actionable level, and they're saying we're not going to get into every employment rate decision, otherwise we're going to be reviewing every, I didn't get the transfer I wanted, I didn't get the office I wanted. So they're saying it has to rise to a certain threshold. That doesn't mean that public employees have less rights than, say, a private doctor. So we submit that is not an applicable comparison. Counsel, Mr. Hooper argued the federal statute and regulations as applying to the due process that his client was entitled to. What's your response? Well, Your Honor, we submit that Judge Maher relied on the correct provision of 1320A-7B5, actually sub-B, as finding a basis for the exclusion. And then the federal regulations also provide that state agencies may enact rules or laws in addition to those in the Medicaid statute, specifically 42 CFR section 2002, I'm sorry, 1002.2 subdivision state A states, in addition to any other authority it may have, the state may exclude an individual or entity from participating in the Medicaid program for any reason for which the secretary may exclude the individual from participating in the Medicare program. And that section is 1320A-7B5B. And then subdivision B of the regulation states that nothing contained in this part should be construed to limit a state's own authority to exclude an individual or entity from Medicaid for any reason or period authorized by state law. Dr. Guzman was temporarily suspended pursuant to state law. Anything further? No, Your Honor. Thank you, counsel. The case just argued will be submitted for decision, and we will hear argument next in Metro Lights v. The City of Los Angeles. Thank you.
judges: Thompson, O'scannlain, Tallman